# BURNS v. UNITED STATES

No. 89–7260.   Argued December 3, 1990—Decided June 13, 1991

*Steven H. Goldblatt* argued the cause and filed briefs for petitioner.

*Stephen J. Marzen* argued the cause for the United States. With him on the brief were *Acting Solicitor General Roberts, Acting Assistant Attorney General Mueller, Deputy Solicitor General Bryson,* and *J. Douglas Wilson.*

JUSTICE MARSHALL delivered the opinion of the Court.

The question in this case is whether a district court may depart upward from the sentencing range established by the Sentencing Guidelines without first notifying the parties that it intends to depart.   We hold that it may not.

I

Petitioner William Burns was employed by the United States Agency for International Development (AID) from 1967 until 1988.   Between 1982 and 1988, petitioner used his position as a supervisor in the agency's Financial Management Section to authorize payment of AID funds into a bank account controlled by him in the name of a fictitious person. During this period, 53 fraudulent payments totaling over $1.2 million were paid into the account.

Following the Government's detection of this scheme, petitioner agreed to plead guilty to a three-count information charging him with theft of Government funds, 18 U. S. C. § 641, making false claims against the Government, 18 U. S. C. § 287, and attempted tax evasion, 26 U. S. C. § 7201.   The plea agreement stated the parties' expectation that petitioner would be sentenced within the Guidelines range corresponding to an offense level of 19 and a criminal history category of I.

The probation officer confirmed this expectation in his presentence report and found the applicable sentencing range to be 30 to 37 months.   The report also concluded: "There are no factors that would warrant departure from the guideline sentence."   App. 21.   Both petitioner and the Government reviewed the presentence report, and neither party filed any objections to it.

Nonetheless, at the conclusion of the sentencing hearing, the District Court announced that it was departing upward from the Guidelines sentencing range.   The District Court set forth three reasons for the departure: (1) the extensive duration of petitioner's criminal conduct; (2) the disruption to

governmental functions caused by petitioner's criminal conduct; and (3) petitioner's use of his tax evasion offense to conceal his theft and false claims offenses. Based upon these considerations, the District Court sentenced petitioner to 60 months' imprisonment.

On appeal, petitioner argued that Rule 32 of the Federal Rules of Criminal Procedure obliged the District Court to furnish advance notice of its intent to depart from the Guidelines. The Court of Appeals for the District of Columbia Circuit rejected petitioner's contention and affirmed his sentence. The court observed that, although subdivision (a)(1) of Rule 32 requires the district court to afford the parties "an opportunity to comment upon . . . matters relating to the appropriate sentence" at the sentencing hearing, the Rule contains no express language requiring a district court to notify the parties of its intent to make *sua sponte* departures from the Guidelines. The court determined that it would be inappropriate to impose such a requirement on district courts in the absence of such express statutory language. See 282 U. S. App. D. C. 194, 199, 893 F. 2d 1343, 1348 (1990).

By contrast, several other Circuits have concluded that Rule 32 does require a district court to provide notice of its intent *sua sponte* to depart upward from an applicable Guidelines sentencing range.[1] We granted certiorari to resolve this conflict. 497 U. S. 1023 (1990). We now reverse.

II

A

The Sentencing Reform Act of 1984 revolutionized the manner in which district courts sentence persons convicted of federal crimes. See generally *Mistretta* v. *United States*, 488 U. S. 361, 363–367 (1989). Before the Act, Congress was generally content to define broad sentencing ranges,

---

[1] See, *e. g.*, *United States* v. *Palta*, 880 F. 2d 636, 640 (CA2 1989); *United States* v. *Nuno-Para*, 877 F. 2d 1409, 1415 (CA9 1989); *United States* v. *Otero*, 868 F. 2d 1412, 1415 (CA5 1989).

leaving the imposition of sentences within those ranges to the discretion of individual judges, to be exercised on a case-by-case basis. Now, under the "guidelines" system initiated by the Act, district court judges determine sentences based on the various offense-related and offender-related factors identified by the Guidelines of the United States Sentencing Commission. See 18 U. S. C. §§ 3553(a)(4), (b). The purpose of this reform was to eliminate the "unwarranted disparit[ies] and . . . uncertainty" associated with indeterminate sentencing. See, e. g., S. Rep. No. 98–225, p. 49 (1983). The only circumstance in which the district court can disregard the mechanical dictates of the Guidelines is when it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission . . . ." 18 U. S. C. § 3553(b).

Procedural reforms, too, were necessary to achieve Congress' goal of assuring "certainty and fairness" in sentencing. See 28 U. S. C. § 991(b)(1)(B). As the Commission has explained:

> "In pre-guidelines practice, factors relevant to sentencing were often determined in an informal fashion. The informality was to some extent explained by the fact that particular offense and offender characteristics rarely had a highly specific or required sentencing consequence. This situation will no longer exist under sentencing guidelines. The court's resolution of disputed sentencing factors will usually have a measurable effect on the applicable punishment. More formality is therefore unavoidable if the sentencing process is to be accurate and fair. . . . *When a reasonable dispute exists about any factor important to the sentencing determination, the court must ensure that the parties have an adequate opportunity to present relevant information.*" U. S. Sentencing Comm'n, Guidelines Manual § 6A1.3, official commentary (1990) (emphasis added).

As amended by the Sentencing Reform Act, Federal Rule of Criminal Procedure 32 provides for focused, adversarial development of the factual and legal issues relevant to determining the appropriate Guidelines sentence. Rule 32 frames these issues by directing the probation officer to prepare a presentence report addressing all matters germane to the defendant's sentence. See Fed. Rule Crim. Proc. 32(c)(2).[2] At least 10 days before the sentencing, the report must be disclosed to the parties, see Rules 32(c)(3)(A), (C), whom the Guidelines contemplate will then be afforded an opportunity to file responses or objections with the district court, see Guidelines § 6A1.2, and official commentary.[3] Finally, Rule 32(a)(1) provides that "[a]t the sentencing hearing, the court [must] afford the counsel for the defendant and the attorney for the Government an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence."

---

[2] Pursuant to Rule 32(c)(2), the presentence report is to contain (a) information about the history and characteristics of the defendant, including his prior criminal record; (b) the classification of the offense and the defendant under the Sentencing Guidelines, possible sentencing ranges, and any factors that might warrant departure from the Guidelines; (c) any pertinent policy statements issued by the Sentencing Commission; (d) the impact of the defendant's offense upon any victims; (e) information relating to possible sentences not requiring incarceration, unless the court orders otherwise; and (f) any other information requested by the court.

[3] District courts have generally implemented this directive through local rules that allow the parties to file objections to the presentence report in advance of the sentencing hearing and that require the probation officer to respond to those objections. See, e. g., U. S. Dist. Ct. for the MD Ala. Rules 33(a)–(c); U. S. Dist. Ct. for the D DC Rules 311(a)–(c); U. S. Dist. Ct. for the ND Fla. Gen. Rules 23(b)–(d); U. S. Dist. Ct. for the ND Ill. Crim. Rules 2.06(g)–(i); U. S. Dist. Ct. for the ED–MD–WD La. Rules 16M(a)–(c); U. S. Dist. Ct. for the D. Minn. Rules 83.10(c)–(d); U. S. Dist. Ct. for the EDNC Rules 50.03–50.05; U. S. Dist. Ct. for the ND Ohio Crim. Rules 10.05(2)(b)–(d); U. S. Dist. Ct. for the WD Okla. Rules 42(E)(1)–(3); U. S. Dist. Ct. for the ED Tenn. Rules 27.3–27.5; U. S. Dist. Ct. for the ND Tex. Rules 10.9(b)–(e); U. S. Dist. Ct. for the WD Va. Rules 14(1)–(3); U. S. Dist. Ct. for the D. Wyo. Rules 219(c)–(f).

This case involves one aspect of the procedures surrounding Guidelines sentencing: whether the defendant is entitled to notice before the district court departs *sua sponte* from the Guidelines sentencing range.[4]   In the ordinary case, the presentence report or the Government's own recommendation will notify the defendant that an upward departure will be at issue and of the facts that allegedly support such a departure.[5]   Here we deal with the extraordinary case in which the district court, on its own initiative and contrary to the expectations of both the defendant and the Government, decides that the factual and legal predicates for a departure are satisfied.   The question before us is whether Congress, in enacting the Sentencing Reform Act, intended that the district court be free to make such a determination without notifying the parties.   We believe that the answer to this question is clearly no.

B

As we have set forth, Rule 32 contemplates full adversary testing of the issues relevant to a Guidelines sentence and mandates that the parties be given "an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence."   Fed. Rule Crim. Proc. 32(a)(1).   Obviously, whether a *sua sponte* departure from the Guidelines would be legally and factually warranted is a "matte[r] relating to the appropriate sentence."   In our view, it makes no sense to impute to Congress an intent that a defendant have the right *to comment* on the appropriateness of a *sua sponte* departure but not the

---

[4] It is equally appropriate to frame the issue as whether the *parties* are entitled to notice before the district court departs upward *or* downward from the Guidelines range.   Under Rule 32, it is clear that the defendant and the Government enjoy equal procedural entitlements.

[5] If the Government makes the recommendation in writing, Federal Rule of Criminal Procedure 49(a) requires that it be served upon the defendant.

right *to be notified* that the court is contemplating such a ruling.

In arguing that Rule 32 does not contemplate notice in such a situation, the Government derives decisive meaning from congressional silence. Rule 32(c)(3)(A), the Government observes, expressly obliges the district court to give the parties' 10 days' notice of the contents of the presentence report. Because Rule 32 does not contain a like provision expressly obliging the district court to announce that it is contemplating to depart *sua sponte*, the Government concludes that Congress must have intended to deny the parties any right to notice in this setting.

We find the Government's analysis unconvincing. As one court has aptly put it, "[n]ot every silence is pregnant." *State of Illinois Dept. of Public Aid* v. *Schweiker*, 707 F. 2d 273, 277 (CA7 1983). In some cases, Congress intends silence to rule out a particular statutory application, while in others Congress' silence signifies merely an expectation that nothing more need be said in order to effectuate the relevant legislative objective. An inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent.

Here the textual and contextual evidence of legislative intent indicates that Congress did not intend district courts to depart from the Guidelines *sua sponte* without first affording notice to the parties. Such a reading is contrary to the text of Rule 32(a)(1) because it renders meaningless the parties' express right "to comment upon . . . matters relating to the appropriate sentence." "Th[e] right to be heard has little reality or worth unless one is informed" that a decision is contemplated. *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306, 314 (1950). This is especially true when the decision in question is a *sua sponte* departure under the Guidelines. Because the Guidelines place essentially no limit on the number of potential factors that may warrant a depar-

ture, see, *e. g.*, Guidelines ch. 1, pt. A4(b), no one is in a position to guess when or on what grounds a district court might depart, much less to "comment" on such a possibility in a coherent way.   The Government's construction of congressional "silence" would thus render what Congress has *expressly* said absurd.   Cf. *Green* v. *Bock Laundry Machine Co.*, 490 U. S. 504, 527 (1989) (SCALIA, J., concurring in judgment) (when "confronted . . . with a statute which, if interpreted literally, produces an absurd, and perhaps unconstitutional result[,] [o]ur task is to give some alternative meaning [to the statute] . . . that avoids this consequence").

The inference that the Government asks us to draw from silence also is inconsistent with Rule 32's purpose of promoting focused, adversarial resolution of the legal and factual issues relevant to fixing Guidelines sentences.   At best, under the Government's rendering of Rule 32, parties will address possible *sua sponte* departures in a random and wasteful way by trying to anticipate and negate every conceivable ground on which the district court might choose to depart on its own initiative.   At worst, and more likely, the parties will not even try to anticipate such a development; where neither the presentence report nor the attorney for the Government has suggested a ground for upward departure, defense counsel might be reluctant to suggest such a possibility to the district court, even for the purpose of rebutting it.   In every case in which the parties fail to anticipate an unannounced and uninvited departure by the district court, a critical sentencing determination will go untested by the adversarial process contemplated by Rule 32 and the Guidelines.

Lastly, the meaning that the Government attaches to Congress' silence in Rule 32 is completely opposite to the meaning that this Court has attached to silence in a variety of analogous settings.   Notwithstanding the absence of express statutory language, this Court has readily construed statutes that authorize deprivations of liberty or property to require that the Government give affected individuals *both* notice

*and* a meaningful opportunity to be heard.   See *American Power & Light Co.* v. *SEC*, 329 U. S. 90, 107–108 (1946) (statute permitting Securities and Exchange Commission to order corporate dissolution); *The Japanese Immigrant Case*, 189 U. S. 86, 99–101 (1903) (statute permitting exclusion of aliens seeking to enter United States).   The Court has likewise inferred other statutory protections essential to assuring procedural fairness.   See *Kent* v. *United States*, 383 U. S. 541, 557 (1966) (right to full, adversary-style representation in juvenile transfer proceedings); *Greene* v. *McElroy*, 360 U. S. 474, 495–508 (1959) (right to confront adverse witnesses and evidence in security-clearance revocation proceedings); *Wong Yang Sung* v. *McGrath*, 339 U. S. 33, 48–51 (1950) (right to formal hearing in deportation proceedings).

In this case, were we to read Rule 32 to dispense with notice, we would then have to confront the serious question whether notice in this setting is mandated by the Due Process Clause.   Because Rule 32 does not clearly state that a district court *sua sponte* may depart upward from an applicable Guidelines sentencing range without providing notice to the defendant we decline to impute such an intention to Congress.   See, *e. g.*, *Edward J. DeBartolo Corp.* v. *Florida Gulf Coast Building & Construction Trades Council*, 485 U. S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress").

## III

We hold that before a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling.   This notice must specifically identify

the ground on which the district court is contemplating an upward departure.[6]

Petitioner did not receive the notice to which he was entitled under Rule 32. Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

JUSTICE SOUTER, with whom JUSTICE WHITE and JUSTICE O'CONNOR join, and with whom THE CHIEF JUSTICE joins as to Part I, dissenting.

The Court today imposes a procedural requirement neither contemplated by Congress nor warranted by the language of any statute or rule. The Court's inference of a notice requirement from congressional silence rests on a failure to appreciate the extraordinary detail with which the Sentencing Reform Act of 1984 (in amending Federal Rule of Criminal Procedure 32 and in its other provisions) expressly provides the procedures to be followed in imposing sentence in a federal criminal case. The absence from this carefully calibrated scheme of any provision for notice of the sort required by the Court makes it clear that, in the words the Court quotes, *ante,* at 136, the congressional silence was pregnant, and that Congress intended to require no such notice. The Court's interpretation of Rule 32 accomplishes " 'not a construction of a [rule], but, in effect, an enlargement of it by the court.'" *West Virginia University Hospitals, Inc.* v. *Casey,* 499 U. S. 83, 101 (1991), quoting *Iselin* v. *United States,* 270 U. S. 245, 251 (1926) (Brandeis, J.). Because the Court's

---

[6] Because the question of the *timing* of the reasonable notice required by Rule 32 is not before us, we express no opinion on that issue. Rather, we leave it to the lower courts, which, of course, remain free to adopt appropriate procedures by local rule. See Guidelines § 6A1.2, and official commentary ("Courts should adopt procedures to provide for . . . the narrowing and resolution, where feasible, of issues in dispute in advance of the sentencing hearing"). See also n. 3, *supra* (listing local rules established to govern resolution of objections to findings in presentence report).

creation cannot be justified as a reasonable construction of the Rule, I respectfully dissent.

I

The express procedural requirements of the Sentencing Reform Act are numerous. Unless the court makes findings that would justify dispensing with a presentence investigation, the probation officer must make a presentence report, Fed. Rule Crim. Proc. 32(c)(1), that includes, *inter alia,* "information about the history and characteristics of the defendant"; "the classification of the offense and of the defendant under the categories established by the Sentencing Commission . . . that the probation officer believes to be applicable to the defendant's case"; "the sentencing range suggested for such a category of offense committed by such a category of defendant as set forth in the guidelines issued by the Sentencing Commission"; and "an explanation by the probation officer of any factors that may indicate that a sentence of a different kind or of a different length from one within the applicable guideline would be more appropriate under all the circumstances." Fed. Rules Crim. Proc. 32(c)(2)(A) and (B).

The same Rule provides several guarantees of a defendant's right to address the court. At the sentencing hearing, the district court "shall afford the counsel for the defendant and the attorney for the Government an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence." Rule 32(a) (1). Before imposing sentence the court must "determine that the defendant and his counsel have had the opportunity to read and discuss" any presentence report and must afford the defendant and his counsel an opportunity to speak to the court and present mitigating information. Rule 32(a)(1)(A). Finally, the defendant and his counsel must be given the "opportunity to comment on the report and, in the discretion of the court, to introduce testimony or other information

relating to any alleged factual inaccuracy contained in it."
Rule 32(c)(3)(A).

The report itself, "not including any final recommendation
as to sentence," must in most respects be disclosed to the
defendant, his counsel, and the attorney for the Government
at least 10 days before sentencing, unless the defendant
waives his right to that notice. Rules 32(c)(3)(A) and (C);
18 U. S. C. § 3552(d). Even when there is no full report,
"[p]rior to the sentencing hearing, the court shall provide the
counsel for the defendant and the attorney for the Govern-
ment with notice of the probation officer's determination,
pursuant to the provisions of subdivision (c)(2)(B), of the sen-
tencing classifications and sentencing guideline range be-
lieved to be applicable to the case." Rule 32(a)(1).

The district court must sentence within the range set by
the Guidelines, unless it finds "an aggravating or mitigating
circumstance of a kind, or to a degree, not adequately taken
into consideration by the Sentencing Commission in formulat-
ing the guidelines that should result in a sentence different
from that described." 18 U. S. C. § 3553(b). A judge who
departs from the Guidelines must "state in open court . . .
the specific reason for the imposition of a sentence different
from that described," § 3553(c)(2), and a sentence outside the
applicable range may be appealed, §§ 3742(a)(3), (b)(3).

For all this attentive concern with procedure, neither Rule
32 nor any other provision of the Sentencing Reform Act ex-
pressly requires advance notice of a district court's intention
to depart *sua sponte* from the Guidelines range. The Court
contends that such a notice requirement is implicit in the pro-
vision of Rule 32(a)(1)[1] mandating that the parties be given

---

[1] Rule 32(a)(1) provides:

"Sentence shall be imposed without unnecessary delay, but the court
may, when there is a factor important to the sentencing determination that
is not then capable of being resolved, postpone the imposition of sentence
for a reasonable time until the factor is capable of being resolved. Prior to
the sentencing hearing, the court shall provide the counsel for the defend-

"an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence." In the Court's view, the right to comment on a matter relating to sentencing, such as the possibility of upward departure, can be exercised effectively only when that "matter" is identified explicitly; accordingly, the argument runs, in providing an opportunity to comment Congress must also have intended to require that notice be given of any matter upon which the parties might desire to comment. See *ante*, at 136–137.

The difficulty with this reasoning is that the terms of the Act reflect a decided congressional disinclination to rely on presuppositions and silent intentions in place of explicit notice requirements. The Act expressly requires that before sentencing the court must give notice to the defense of the probation officer's determination of the sentencing classifications and Guidelines range applicable to the case. The Act

---

ant and the attorney for the Government with notice of the probation officer's determination, pursuant to the provisions of subdivision (c)(2)(B), of the sentencing classifications and sentencing guideline range believed to be applicable to the case. At the sentencing hearing, the court shall afford the counsel for the defendant and the attorney for the Government an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence. Before imposing sentence, the court shall also—

"(A) determine that the defendant and defendant's counsel have had the opportunity to read and discuss the presentence investigation report made available pursuant to subdivision (c)(3)(A) or summary thereof made available pursuant to subdivision (c)(3)(B);

"(B) afford counsel for the defendant an opportunity to speak on behalf of the defendant; and

"(C) address the defendant personally and determine if the defendant wishes to make a statement and to present any information in mitigation of the sentence.

"The attorney for the Government shall have an equivalent opportunity to speak to the court. Upon a motion that is jointly filed by the defendant and by the attorney for the Government, the court may hear in camera such a statement by the defendant, counsel for the defendant, or the attorney for the Government."

also expressly entitles the defense to a copy of the presentence report not less than 10 days before the hearing (subject to qualifications not relevant here), and it expressly directs the court to ensure that the defendant and the defendant's counsel have had the opportunity to read and discuss the report before sentence is imposed.

What is remarkable about these provisions is that all of them (save for the guarantee of 10-day notice) would be superfluous on the Court's reasoning. It is fair to say, for example, that the right to comment not merely on the appropriate classifications and Guidelines range, but on the probation officer's determinations of what they are, implies a right to notice of those determinations. And yet Congress did not leave the notice requirement to the force of implication but expressly provided for it, both in cases with a presentence report and in cases without one. It would be only slightly less compelling to argue that a right to comment on other matters affecting sentence implies a right to read, discuss, and address the court with respect to the probation officer's report. And yet, again, the drafters of Rule 32 provided for this result, not by relying on implication but by specific mandates to disclose.

Given this congressional reliance on explicit provisions for disclosure even when notice requirements might reasonably have been inferred from rights to comment, there is great significance in the congressional silence about notice when a sentencing judge intends to depart from a Guidelines range. The only fair inference from this differential treatment is that when Congress meant to provide notice and disclosure, it was careful to be explicit, as against which its silence on the predeparture notice at issue here bespeaks no intent that notice be given. See, *e. g.*, *General Motors Corp.* v. *United States*, 496 U. S. 530, 541 (1990).

The Court seeks to justify its rewriting of Rule 32 by asserting that interpreting the Rule as written would be "absurd," because such an interpretation would "rende[r] mean-

ingless" the right to comment on "other matters relating to the appropriate sentence" conferred by the Rule. *Ante,* at 136–137. Even if we were authorized to embellish Congress' handiwork in the interest of enduing it with additional meaning, however, the Court's argument would fail on its own terms, for the Court's specific notice requirement is not necessary to save the right to comment from meaninglessness.

First, the phrase "other matters relating to the appropriate sentence" includes a wide variety of matters beyond the district court's possible inclination to depart *sua sponte,* such as the existence and significance of facts indicating the sentence that the court should choose within the applicable Guidelines range. Lack of specific notice as to just one "other matter" (the court's option to depart upward) does not render the entire phrase meaningless.

Second, even with regard to the "matter" of possible upward departure, the absence of specific notice hardly renders the opportunity to comment meaningless. The Court's contrary conclusion rests on its erroneous treatment of the absence of specific notice of the factors on which the court may rely as equivalent to a complete absence of notice that the court may depart. Because the Sentencing Reform Act provides that a court may depart from the applicable Guideline range if it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described," 18 U. S. C. § 3553(b), the statute itself puts the parties on notice that departure is always a possibility, and the parties can use their opportunity to comment to address that possibility. Indeed, the record in this case demonstrates that, even without specific notice, counsel may choose to gear part of the argument to the possibility of departure. At the sentencing hearing, despite the absence of any indication that the judge was contemplating departure, petitioner's counsel closed his remarks to the court by asking

"that the period of incarceration be limited enough that he has a family to return to, that he has a future that he can work towards rebuilding, *and we think the guidelines are the appropriate range, Your Honor. We ask Your Honor to consider a sentence within the guidelines.*" App. 45 (emphasis added).

Although specific notice of the sort required by the Court might be useful to the parties in helping them focus on specific potential grounds for departure, its absence hardly makes the opportunity to comment on the possibility of departure so meaningless as to justify judicial legislation. Although "we construe statutes, where possible, so as to avoid rendering superfluous any parts thereof," *Astoria Federal Savings & Loan Assn.* v. *Solimino, ante,* at 112, it is not our practice to supplement their provisions simply because we think that some statutory provision might usefully do further duty than Congress has assigned to it.[2]

The Court also seeks to rely on the rule that statutes should be construed so as to avoid raising serious constitutional problems. *Ante,* at 138. This canon of construction, however, only applies when the constitutional difficulty can be avoided by a "'*reasonable* construction,'" *Edward J. DeBartolo Corp.* v. *Florida Gulf Coast Building & Construction Trades Council,* 485 U. S. 568, 575 (1988) (emphasis

---

[2] Although the Court stops short of explicitly relying on § 6A1.3 of the Sentencing Guidelines as providing textual support for a notice requirement, its lengthy quotation from the commentary to that provision, *ante,* at 133, bears mention. Section 6A1.3 addresses nothing more than disputes about factual matters like the presence or absence of particular offense and offender characteristics. Accordingly, the Introductory Commentary to Part A of Chapter Six of the Guidelines (of which § 6A1.3 is a part) states that "[t]his Part . . . sets forth the procedures for establishing the *facts* upon which the sentence will be based." (Emphasis added.) Because § 6A1.3 thus deals only with the resolution of fact-based disputes, it simply does not bear on the legal determination whether a given fact, once established, amounts to a circumstance so aggravating as to justify departure.

added), of the statute. The problem with the Court's notice requirement is that in no way does it result from a "construction" of anything in Rule 32. In light of the emphatic congressional silence about prior notice of *sua sponte* departures, what the Court does to Rule 32 comes closer to reconstruction than construction.

In any event, the canon applies only when a contrary construction would "raise serious constitutional problems." *Ibid.* Because, as I will now proceed to discuss, Rule 32 as written raises no such problems, there is no warrant for the Court's conclusion.[3]

## II

I begin with the proposition that "the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause." *Gardner* v. *Florida*, 430 U. S. 349, 358 (1977) (plurality opinion). At the threshold, of course, there must be an interest subject to due process protection, such as the expectancy that we found to have been created by the Nebraska statute at issue in *Greenholtz* v. *Inmates of Nebraska Penal and Correctional Complex*, 442 U. S. 1 (1979). The Act there in question directed that the parole board, when considering the possible release of an eligible prisoner, "'shall order his release unless it is of the opinion that his release should be deferred because'" one of four statutory criteria was met. *Id.*, at 11; see also *Cleveland Bd. of Ed.* v. *Loudermill*, 470 U. S. 532, 538–541 (1985); *Wolff* v. *McDonnell*, 418 U. S. 539, 558 (1974). The Sentencing Reform Act creates a similar presumption by providing that "[t]he court

---

[3] The Court's statement that we have "readily construed statutes that authorize deprivations of liberty or property to require that the Government give affected individuals *both* notice *and* a meaningful opportunity to be heard," *ante*, at 137–138 (emphasis in original) (citing cases), is inapposite. The cases cited by the Court involved statutes that made no provision whatsoever for notice or hearing. By contrast, the Sentencing Reform Act itself, as explained earlier, gives notice that departure is always a possibility; and the express provisions of Rule 32 give the defendant the opportunity to be heard at his sentencing hearing.

*shall* impose a sentence of the kind, and within the range, [set forth in the Guidelines,] *unless* the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U. S. C. § 3553(b) (emphasis added). I therefore conclude that a defendant enjoys an expectation subject to due process protection that he will receive a sentence within the presumptively applicable range in the absence of grounds defined by the Act as justifying departure.

The question is "what process is due." *Morrissey* v. *Brewer*, 408 U. S. 471, 481 (1972). " ' "[D]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances,' " *Cafeteria & Restaurant Workers* v. *McElroy*, 367 U. S. 886, 895 (1961), but is "flexible[, calling] for such procedural protections as the particular situation demands." *Morrissey, supra,* at 481. The methodology for assessing those demands was the subject of *Mathews* v. *Eldridge*, 424 U. S. 319 (1976), where we prescribed a three-part enquiry to consider

> "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.,* at 335.

Although *Mathews* itself concerned the adequacy of administrative factfinding procedures, we have not confined the *Mathews* approach to administrative contexts or to situations where simple factfinding is the sole determinant of governmental action. In *Parham* v. *J. R.,* 442 U. S. 584 (1979), for example, we addressed the constitutionality of Georgia's procedures for involuntarily admitting a child for treatment in a state mental hospital and explicitly relied on the *Mathews*

structure. *Id.*, at 599–600. We called it "a general approach for testing challenged state procedures under a due process claim," *id.*, at 599, even as we recognized that "[w]hile facts are plainly necessary for a proper resolution of [the relevant medical] questions, they are only a first step in the process," *id.*, at 609. In *Greenholtz*, we relied on *Mathews* while realizing that the parole board's decision was "necessarily subjective in part and predictive in part," that it entailed the exercise of "very broad discretion," 442 U. S., at 13, and that none of the statutory bases for denying parole was a mere issue of historical fact, see *id.*, at 11. In *Ingraham* v. *Wright*, 430 U. S. 651 (1977), holding that due process did not require notice and a hearing before the infliction of corporal punishment, we applied *Mathews* even though the relevant "risk of error" was not merely that facts might be mistaken, but that apart from any factual mistake corporal punishment might be inflicted "unnecessarily or excessively." 430 U. S., at 678. The *Mathews* analysis has thus been used as a general approach for determining the procedures required by due process whenever erroneous governmental action would infringe an individual's protected interest, and I think that *Mathews* provides the right framework for the analysis here as well.

As for the first *Mathews* factor, a convicted defendant plainly has a lively concern with the consequences of an erroneous upward departure. In the present case, for example, petitioner's sentence of 60 months' imprisonment was double the low end of the recommended Guidelines range of 30 to 37 months. A defendant's interest in receiving a sentence not unlawfully higher than the upper limit of the Guidelines range is thus clearly substantial.

Neither, however, is the Government's interest at issue here an insignificant one. Although the Court does not decide when notice must be given, it seems likely that the Court's notice requirement will force a district court to postpone the imposition of sentence whenever the court decides

at or shortly before the sentencing hearing that upward departure should be considered. To avoid the possibility of such a postponement, a sentencing judge will need to schedule time well in advance of the sentencing hearing to identify and consider possible grounds for departure. Since the time spent on this advance review will not simply be recovered by subtracting it from the length of the subsequent sentencing hearing, the result will almost certainly be more time spent on a process already lengthened considerably by the new sentencing scheme. See Report of the Federal Courts Study Committee 137 (1990) (90 percent of judges in survey report that Guidelines have made sentencing more time consuming; 30 percent report an increase of at least 50 percent in time spent on sentencing). Thus, the Government has an important interest in avoiding the additional drain on judicial resources that the Court's notice requirement will impose on already overburdened district judges. Cf., *e. g.*, Advisory Committee's Notes on Fed. Rule Crim. Proc. 32, 18 U. S. C. App., p. 798 (declining to require sentencing judge to notify defendant of possible uses of presentence report, because "[t]he Committee believes that this additional burden should not be placed upon the trial judge").[4]

---

[4] Although conceivably a district court might give predeparture notice at the sentencing hearing itself, without postponing sentencing pending a further hearing on the question of departure, such a practice would be of little use in reducing the risk of error in sentencing determinations. A contemporaneous warning of upward departure might sharpen defense counsel's rhetoric, but it would not be of much help in enabling him to present evidence on disputed facts he had not previously meant to contest, or in preparing him to address the legal issue of the adequacy of the Guidelines in reflecting a particular aggravating circumstance. Contemporaneous notice would, then, probably turn out to be more a formality than a substantive benefit.

While such contemporaneous notice (and any additional argument offered as a result) would be unlikely to add substantially to the length of a sentencing hearing, and, therefore, implicates only a modest Government interest in efficiency, even that modest interest is sufficient to balance the *de minimis* benefit of such notice to the defense. In view of the fact that,

With each party having substantial and contrary interests, great significance attaches to the second element in the *Mathews* analysis. I think it clear that both the risk of error under the procedures already required and the probable value of a further notice requirement are sufficiently low that the current sentencing scheme passes constitutional muster without the notice requirement imposed by the Court today.

The first of the possible sources of error that could infect a sentencing decision are the conclusions of fact thought by the sentencing judge to justify any upward departure. These factual propositions are, however, generally presented in the presentence report, and are subject to challenge and evidentiary resolution under Rule 32(c)(3)(A).[5] The practical adequacy of this chance to challenge any erroneous fact statements is not limited to any significant degree by lack of notice that the judge is considering departure from the Guidelines, since a defendant clearly is on notice that an unfavorably erroneous fact statement can do him serious harm by influencing the judge to sentence on the high end of the Guidelines range, even when the disquieting fact might not drive the judge to the point of considering departure from the range itself. No procedure beyond that of the existing law is therefore necessary to provide a defendant with a reason as well as an effective opportunity to minimize the risk of an upward departure resting on a mistake of fact relevant to sentencing.

A second source of possible sentencing error inheres in the interpretation and application of congressional sentencing authorization. Of course, under any codified sentencing scheme there will always be some risk, albeit normally a low

as I explain below, existing procedures provide substantial protection against any risk of error, the minimal benefit of contemporaneous notice cannot be said to be a requirement of due process.

[5] I do not address whether due process would require notice prior to a decision by a sentencing judge to depart upward on the basis of facts not contained in the presentence report.

one, that a judge may stray beyond the outer limit of the sentence provided for the offense in question, in which event rehearing or appeal will allow for correction.   There is, however, a potential for legal error peculiar to proceedings under the Sentencing Reform Act, in the provision that an aggravating or mitigating fact may justify departure from the otherwise applicable Guidelines range if that factual circumstance is not adequately reflected in the range chosen by the Commission.   18 U. S. C. § 3553(b).   Because such an issue of adequate reflection goes essentially to the Commission's intentions, it has uniformly, and I believe correctly, been treated as an issue of law subject to customary appellate review.[6]   Whether this appellate opportunity suffices for due process depends on whether the effectiveness of any appeal would be enhanced, or the probable need for appeal obviated, by requiring prior notice of the sentencing judge's intentions or concerns at the trial stage.   I believe the answer is no.

If the issue of adequate reflection were one that called for evidentiary litigation by questioning witnesses about the Commissioners' thought processes, or by discovering or introducing documentary evidence that would otherwise be unavailable on appeal, then notice in time to litigate at the

---

[6] Every Circuit except the Fifth has explicitly held, like the District of Columbia Circuit in this case, see 282 U. S. App. D. C. 194, 196, 893 F. 2d 1343, 1345 (1990), that "plenary" or *"de novo"* review is appropriate.   See *United States* v. *Diaz-Villafane,* 874 F. 2d 43, 49 (CA1), cert. denied, 493 U. S. 862 (1989); *United States* v. *Lara,* 905 F. 2d 599, 602 (CA2 1990); *United States* v. *Ryan,* 866 F. 2d 604, 610 (CA3 1989); *United States* v. *Chester,* 919 F. 2d 896, 900 (CA4 1990); *United States* v. *Rodriguez,* 882 F. 2d 1059, 1067 (CA6 1989), cert. denied, 493 U. S. 1084 (1990); *United States* v. *Williams,* 901 F. 2d 1394, 1396 (CA7 1990), cert. pending, No. 90–5849; *United States* v. *Whitehorse,* 909 F. 2d 316, 318 (CA8 1990); *United States* v. *Singleton,* 917 F. 2d 411, 412 (CA9 1990); *United States* v. *Dean,* 908 F. 2d 1491, 1494 (CA10 1990); *United States* v. *Russell,* 917 F. 2d 512, 515 (CA11 1990), cert. denied, 499 U. S. 953 (1991).   The Fifth Circuit has held that departure will be affirmed when the reasons for departure are "acceptable."   See, *e. g., United States* v. *Murillo,* 902 F. 2d 1169, 1172 (1990).

trial level would be indispensable, virtually as a matter of definition. But a district court's determination that an aggravating circumstance is "of a kind, or . . . a degree, not adequately taken into consideration by the Sentencing Commission," *ibid.*, is not subject to that sort of evidentiary proof. The legal issue of adequate reflection will turn not on an evidentiary record that might be developed at a sentencing hearing, but on documented administrative history and commentary that will be available to any defendant at the appellate stage.

Because a defendant thus has no need for evidentiary litigation, he has no need for notice of judicial intentions in order to focus the presentation of evidence. And while in some cases defense counsel might be able to affect a trial judge's initial view of the adequacy of a Guidelines range in reflecting an aggravating circumstance, the principal safeguard against serving extra time resulting from a mistake about the adequacy of the Guidelines will still be the safeguard available under the statute as now applied, an appeal of law. The opportunity for such a post-trial appeal therefore suffices to minimize the chance of any erroneous deprivation of liberty that might otherwise flow from the sort of legal error in question.[7]

---

[7] There is one class of defendants for whom the right to appeal might not substitute for the ability to argue the issue to the district court: those for whom the Guidelines recommend either no incarceration or a period of incarceration shorter than the time necessary for the disposition of an appeal, but who receive a greater sentence in the exercise of the district court's authority to depart. For such a defendant, a successful appeal could come too late to undo completely the damage done by an erroneous departure decision. However, "a process must be judged by the generality of cases to which it applies, and therefore a process which is sufficient for the large majority of a group of claims is by constitutional definition sufficient for all of them." *Walters* v. *National Assn. of Radiation Survivors*, 473 U. S. 305, 330 (1985). There is no contention that this class of defendants is sufficiently large to affect the due process calculus in this case.

Finally, a decision to depart from the Guidelines includes a determination that some sentence more onerous than what the Guidelines would permit is not simply permissible, but is in fact appropriate for the particular offense by the particular defendant. See 18 U. S. C. § 3553(b). In assessing the due process implications of this element of the sentencing decision, it is worth pausing to identify the nature of the error that could occur when a judge makes the ultimate decision about a sentence's duration.

The concept of error in a sentence's factual predicate is fairly obvious, and legal error in assessing the conclusiveness of a Guidelines range, in the sense in which I have just explained it, is equally straightforward. Error in fixing the duration of a sentence outside the Guidelines range, however, must be understood in terms of the discretionary nature of the judicial function in making that decision.

Such a judgment about what the defendant deserves is discretionary in the sense that its underlying premises of fact, law, and value cannot be so quantified, or stated with such precision, as to require a sentencing court to reach one conclusion and one only. There is, rather, a spectrum of sentences that are arguably appropriate or reasonable, cf. *Wasman* v. *United States*, 468 U. S. 559, 563 (1984) (under pre-Guidelines law, sentencing judge has wide discretion within range permitted by statute); *United States* v. *Tucker*, 404 U. S. 443, 446–447 (1972) (same), and error in discretionary sentencing must therefore be identified as a failure to impose a sentence that actually falls within this zone of reasonableness.

The Act provides two procedures to minimize the risk that a defendant will be forced to serve a sentence outside the Guidelines range that is unreasonably long. The first, of course, is the opportunity at the sentencing hearing itself to address the court, apprised by the Guidelines that departure is always possible. As I have noted earlier, even without express notice, counsel may choose to gear part of his argu-

ment to the possibility that departure is on the judge's mind. Petitioner's counsel understood that possibility when he contended that "the guidelines are the appropriate range" and asked the court "to consider a sentence within the guidelines." App. 45. For that matter, even if counsel chooses not to argue against departure specifically, pleas for leniency within the Guidelines range often duplicate the arguments that can be made against upward departure. A defendant thus has both opportunity and motive to make appropriate arguments before the trial judge renders any final decision, even without predeparture notice. Cf. *Loudermill*, 470 U. S., at 543 (even where facts are clear, appropriate action may not be).

The second procedure available to minimize the risk of serving an unreasonable sentence is appellate review of the sentence itself. "If the court of appeals determines that the sentence . . . is outside the applicable guideline range and is unreasonable . . . [and] too high . . . it shall set aside the sentence and remand the case for further sentencing proceedings with such instructions as the court considers appropriate." 18 U. S. C. § 3742(f)(2)(A). While this right to review is only as good as the record that a defendant can present to an appellate court, prehearing notice of a sentencing judge's intentions will not likely enhance the record for the defendant's benefit. A defendant already has the opportunity and impetus to challenge the factual predicate on which a sentence must stand or fall as reasonable or not. And since the comprehensive factual predicate is supplemented by the sentencing judge's statement of reasons for departing from the Guidelines, see § 3553(c), it is difficult to imagine how the record could be more conducive to a comprehensive review of a defendant's claim that his sentence outside the Guidelines range is unreasonably high.

It is, indeed, just the substantiality of this appeal right that indicates why predeparture notice lies beyond the scope of what due process demands. For if there can be said to be

any need for the sort of exact predeparture notice that the Court requires, it does not arise from the risk that a defendant will be forced to serve a sentence that is erroneous by virtue of an unreasonable exercise of discretion. Rather, any incremental advantage that a defendant might obtain from advance knowledge of the judge's thinking will most likely consist of allowing the defendant to be more precise in trying to influence a judge's exercise of discretion within the range of reasonableness that the law allows. The defendant's further advantage, if any, will not be a reduced risk of serving an unreasonable sentence, but an improved opportunity to tailor an exact argument about where the sentence should be set within the reasonable zone. Although the reality of any such advantage that might flow from knowing the judge's mind may be debatable, a defendant's desire for it is nothing new. Litigants have always desired greater opportunities to influence courts in the exercise of discretion within permissible limits. And yet it comes as no surprise that in the days before the Sentencing Reform Act due process was not thought to require the notice and arguably enhanced opportunity that the Court today requires. See *Greenholtz*, 442 U. S., at 16. It comes as no surprise simply because the reason that due process imposed no such notice requirement then is the same that it imposes none today: such notice is not in practice necessary to reduce the risk of serving erroneous sentences. Cf. *Dixon* v. *Love*, 431 U. S. 105, 114 (1977).

In sum, existing process provides what is due without resort to the Court's requirement. This conclusion echoes our treatment in *Greenholtz* of an inmate's liberty interest in early parole, an interest comparable to that of petitioner in a shorter sentence. The Court of Appeals in *Greenholtz* had required the parole board to provide inmates eligible for parole with "written notice reasonably in advance of the hearing together with a list of factors that might be considered." 442 U. S., at 14, n. 6. We decided that due process required no such notice, and held that it would suffice for the board to

"infor[m] the inmate in advance of the month during which the hearing will be held . . . [and] on the day of the hearing . . . pos[t] notice of the exact time," even though the board's notice would not include a list of factors on which the board might rely. *Ibid.* The notice now required by the Court closely resembles the "list of factors" we rejected as constitutionally unnecessary in *Greenholtz.*

I do not suggest that the specific notice required by the Court cannot be justified on grounds of policy. There is, however, nothing in the Sentencing Reform Act or the Due Process Clause that provides a basis for today's holding.

I respectfully dissent.