UNITED STATES of America, Plaintiff–Appellee,

v.

Terry LaJuan WRIGHT, Harold Lee Andreu, Defendants–Appellants.

No. 90–3564.

United States Court of Appeals, Eleventh Circuit.

Aug. 17, 1992.

James H. Burke, Jr., Asst. Federal Public Defender, M. Alan Ceballos, Jacksonville, Fla., for defendants-appellants.

Mark B. Devereaux, Asst. U.S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before ANDERSON and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

PER CURIAM:

Appellants Wright and Andreu were convicted of bank robbery and firearms offenses. They appeal both their convictions and their sentences. For the reasons set forth below, we affirm both of their convictions, affirm Wright's sentence, and vacate Andreu's sentence and remand for resentencing.

## I. FACTS AND PROCEDURAL HISTORY

On July 6, 1989, Joseph Rodney Collier, Terry LaJuan Wright, and Harold Lee Andreu discussed committing a bank robbery in Jacksonville, Florida. According to Collier, Wright and Andreu instructed him at that time on how to rob a bank. The next day, the three drove to Jacksonville and robbed the American Federal Savings Bank of fifty dollars. Collier was the only defendant who entered the bank. He was wearing a ski mask and carrying a gun when he handed a teller a Winn–Dixie bag and ordered her to fill it with money. The teller put more than $7,000 into the bag, but it ripped on the counter and Collier got away with only fifty dollars.

The three then returned to Wright's house in Middleburg, Florida. They were subsequently stopped in their automobile which was later searched by police. The search uncovered two guns, three ski masks, three pair of gloves, and four plastic Winn-dixie bags.

On December 20, 1989, Wright and Andreu were charged in a five-count indictment for their involvement in the robbery.[1] Count I charged both with conspiracy to commit robbery in violation of 18 U.S.C. § 371. Count II charged both with armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d). In Count III, both were charged with the use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). Count IV charged Wright with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and 18 U.S.C. § 924(e)(1). In Count V, Andreu was charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g).

In February 1990, the case was tried to a jury. Collier testified for the Government. On cross-examination, he denied ever burglarizing his high school in late 1986 or early 1987. Wright attempted to call a witness to the stand to contradict Collier's denial of this wrongdoing. The Government's objection to this witness was sustained. The jury returned a verdict of guilty as to all counts.

Based on the career offender provisions of § 4B1.1[2] of the United States Sentencing Guidelines, the presentence investigation report ("PSI") calculated a guideline range of 262 to 327 months for Wright. Wright argued that a felon in possession ("FIP") conviction is not a crime of violence under § 4B1.1. The Government objected, contending that the proper guideline range was 360 months to life, based on Wright's FIP conviction. The court sustained the Government's objection, finding that Wright's FIP conviction was a crime of violence. Wright was then sentenced to 60 months on Count I, 300 months on Count II, and 420 months on Count IV, all of which were to run concurrently. He was sentenced to 60 months on Count III, to run consecutive to the sentences imposed on Counts I, II and IV, plus 5 years supervised release.

With regard to Andreu, the PSI calculated a range of 262 to 327 months for Counts I, II, and V, after classifying him as a career offender. It found no basis for departing from the recommended range. Nor did the Government recommend departure. Andreu objected to the PSI's recommended range, arguing that he was not a career offender because his prior conviction for grand theft was not a crime of violence. After a hearing, the court overruled Andreu's objection and sentenced Andreu to a term of 60 months on Count I, 300 months on Count II, and 120 months on Count V, all of which were to run concurrently. He was sentenced to 60 months on Count III, to run consecutive to the sentences imposed on Counts I, II and V; and five years supervised release. The court further held that even if it had found Andreu's prior grand theft conviction to be a non-violent offense, it would have departed upward under § 4A1.3 and imposed the same sentence.

## II. ISSUES

A. Whether the district court abused its discretion in excluding extrinsic evidence of a witness's prior misconduct under Rule 608(b) of the Federal Rules of Evidence.

B. Whether the district court erred in using Wright's felon in possession of a firearm conviction as the instant offense for purposes of § 4B1.1.

C. Whether the district court erred in classifying Andreu as a career offender based on his prior conviction for grand theft.

D. Assuming that the answer to Issue 3 is yes, then whether the district court erred in

---

1. Collier was also indicted for his involvement in the bank robbery. Collier entered a plea of guilty prior to trial and is not a party to this appeal.

2. Section 4B1.1 provides in relevant part:
 A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. United States Sentencing Commission, *Guidelines Manual*, § 4B1.1 (Nov. 1989).

departing upward from the range recommended by the guidelines.

## III. DISCUSSION

### A. 608(b) Evidentiary Ruling

▆ Both Appellants contend that the district court erred in excluding the testimony of Mr. Mays, Dean of Students at Orange Park High School. Mays would have testified that Collier, a witness for the Government, had personally admitted to Mays his involvement in a high school burglary taking place in late 1986 or early 1987. Collier had testified that he had not committed any burglaries at that time.

Rule 608(b) provides that "[s]pecific instances of the conduct of a witness, for purposes of attacking ... [his] credibility ... may not be proved by extrinsic evidence." Mays's testimony falls squarely within this rule. It is extrinsic evidence offered to undermine the credibility of a witness by proof of a specific instance of bad conduct.[3]

Appellants respond that the testimony was admissible, both because it was material and because it showed bias. It was material, the Appellants contend, because another Government witness testified that Collier was released on his own recognizance at the time of his arrest because he was a first-time offender. The Appellants assert that it might also rebut Collier's claims that he was instructed on how to commit the bank robbery by Wright.

Although Rule 608(b) prohibits the introduction of evidence merely to impeach the general credibility of a witness, "extrinsic evidence which contradicts the *material* testimony of a prior witness is admissible." *United States v. Calle*, 822 F.2d 1016, 1021 (11th Cir.1987) (quoting *United States v. Russell*, 717 F.2d 518, 520 (11th Cir.1983)). We reject the Appellants' argument that this evidence *contradicts* Collier's material testimony. Appellants also fail to explain why the prior uncharged burglary would bias Collier in favor of the Government.

Therefore, the district court was correct in excluding this extrinsic evidence. *See United States v. Terebecki*, 692 F.2d 1345, 1351 (11th Cir.1982).

### B. Wright's Felon in Possession Conviction as the Instant Offense

Before a defendant can be classified a career offender under § 4B1.1 of the guidelines, the Government must demonstrate, *inter alia,* that the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense.[4]

Wright was sentenced as a career offender under § 4B1.1. He does not dispute that he is a career offender; rather, Wright challenges the court's choice of instant offense for the classification. He contends that the court should have used his armed bank robbery conviction, instead of his FIP conviction, as the instant offense. Under § 4B1.1., the switch of instant offenses would have lowered Wright's offense level from 37 to 34, and reduced his guideline range from 360 months—life to 262—327 months.

Wright argues that the use of his FIP conviction as the instant offense was error for three reasons. First, the court's use of the November 1, 1989 guidelines (specifically the reliance on § 4B1.1's definition of a crime of violence) would result in an ex post facto violation. Second, under the particular facts of this case, Wright's FIP conviction might have been "malevolent," but certainly was not "violent." Wright Brief at 15. Lastly, Wright contends that the use of the FIP conviction as the instant offense would amount to an "impermissible doubling up." *Id.* at 18.

▆ We must first decide which version of the guidelines apply to Wright's convictions. Wright committed his crime in July 1989 and was sentenced in May 1990. The guidelines were amended in the interim. 18 U.S.C. § 3553(a)(4) and (5) state that courts should consider the guidelines and policy statements issued by the Sentencing

---

**3.** Furthermore, burglary has been held not to be probative of truthfulness. *United States v. Sellers*, 906 F.2d 597, 603 (11th Cir.1990).

**4.** *See supra* note 2.

Commission that are in effect on the date of sentencing. *United States v. Marin*, 916 F.2d 1536, 1538 n. 2 (11th Cir.1990). Therefore, the guidelines, as amended on November 1, 1989, would initially appear to apply to Wright.

Wright asserts that the application of the "new" definition of crime of violence in § 4B1.1 violates the Ex Post Facto Clause of the Constitution because the newer definition classifies "crimes that are less likely to involve harm to others" as crimes of violence.[5] Appellants Brief at 15. The definition of a crime of violence under the old definition included felonies that, by their nature, involved a *"substantial risk* that physical force ... may be used in the course of committing the offense." U.S.S.G. § 4B1.2(1) (emphasis added); *See* 18 U.S.C. § 16. The amended definition of crime of violence now provides that a crime of violence means any felony "that ... otherwise involves conduct that presents a *serious potential risk* of physical injury to another." U.S.S.G. § 4B1.2(1) (emphasis added); *See* 18 U.S.C. § 924(e).

In *United States v. Stinson*, 943 F.2d 1268 (11th Cir.1991), this court held that possession of a firearm by a felon is a crime of violence under the November 1, 1989 version of the guidelines. We found that such a crime *by its nature* presents a serious potential risk of physical injury to another. *Id.* at 1271. The reasoning of *Stinson* is as applicable to the previous version of § 4B1.2(1) as it is to the amended version. In other words, we believe that *Stinson* would have been decided the same way under the older version of § 4B1.2(1). There is no significant difference, at least under these circumstances, in the words "substantial risk" and "serious potential risk." In fact, the *Stinson* court relied on cases using the old substantial risk stan-

dard.[6] In addition, the Commission indicated that the modification was meant only as a clarification. Amendment 268, U.S.S.G., Appendix C, at 139 (1989 ed.); *see United States v. Robinson*, 935 F.2d 201, 204 (11th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 885, 116 L.Ed.2d 789 (1992). Since Wright's FIP conviction would have been found a crime of violence under both versions of the guidelines, there was no ex post facto violation by the court's use of the amended guidelines.

■ Having decided that the amended version applies to Wright, Wright now asks us to examine the particular facts surrounding his possession conviction. However, as discussed above, *Stinson* determined, categorically, that Wright's FIP conviction is a crime of violence. Thus, it is irrelevant whether Wright's conviction was actually non-violent. The FIP conviction is categorically a crime of violence, and moreover, the district court was obligated to use it as the instant offense under § 4B1.1. *See* U.S.S.G. § 4B1.1, comment. (n. 2) ("If more than one count of conviction is a crime of violence ..., use the maximum authorized term of imprisonment for the count that authorizes the greatest maximum term of imprisonment.").

■ Wright's final challenge to his sentence is that the use of the FIP conviction amounts to an impermissible "doubling up" of punishments under the guidelines. Wright's challenge is unclear. He does not contend that this doubling up of punishments violates a right guaranteed by the Constitution. It appears that Wright is arguing that it violated § 4B1.1 to classify him as a career offender based on his FIP conviction, considering that he was convicted under § 924(e)(1) and § 924(c) for the same underlying conduct.[7]

---

5. Section 4B1.1's "crime of violence" is defined in § 4B1.2(1).

6. To support his position, Wright points out that the Sentencing Commission amended § 4B1.2's *commentary* in November 1991. The commentary now states that the definition of crime of violence does not include unlawful possession of a firearm by a felon. Wright contends that this clarification to the commentary under-

mines this court's holding in *Stinson*. This argument, however, has been rejected by this court on two previous occasions. *See United States v. Adkins*, 961 F.2d 173 (11th Cir.1992) (per curiam); (11th Cir.1992); *United States v. Stinson*, 957 F.2d 813 (11th Cir.1992) (opinion on rehearing).

7. *See supra* p. 1169.

Section 4B1.1 is a recidivist provision in the guidelines. It would be strange indeed if a provision in the guidelines designed to punish recidivism could not take into consideration prior and present convictions. By its own terms, § 4B1.1 mandates that a judge consider prior convictions. Moreover, the provision mentions no exceptions. This court should be reluctant to fashion exceptions where the Commission has failed to do so. *United States v. Goolsby*, 908 F.2d 861, 863 (11th Cir.1990). Thus, at least under the guidelines, the court's use of the FIP conviction was not error.

Furthermore, the career offender provision of the guidelines does not "penalize" Wright any more than the applicable statutes. Section 924(e)(1) is a statutory recidivist provision; it is applicable to Wright because he illegally possessed a firearm in violation of § 922(g) and because he had three prior felony convictions. Under § 924(e)(1), Wright is subject to imprisonment for "not less than fifteen years." Section 924(c) provides for a 5 year consecutive term because Wright used a firearm in a crime of violence. The only effect of § 4B1.1 in this case is its intended effect, namely, to assure uniformity in the sentences ultimately received under criminal statutes. In light of Wright's criminal history, § 4B1.1 did not penalize him in excess of the statutory maximum.[8]

### C. Andreu's Grand Theft Conviction as a Crime of Violence

■ After looking at the particular facts surrounding Andreu's prior conviction for grand theft, the district court held that the conviction was a crime of violence under § 4B1.1.[9] Using the conviction as one of

the predicate crimes of violence, the court applied § 4B1.1 to enhance Andreu's sentence from 57–71 months to 262–327 months (not including the mandatory consecutive 60 months, pursuant to § 924(c), which would be added no matter which range was used).

Andreu argues that the court erred when it analyzed the particular facts underlying the predicate conviction to decide whether it was in fact a crime of violence. Subsequent to Andreu's sentencing, this court decided *United States v. Gonzalez–Lopez*, 911 F.2d 542 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991). We held in *Gonzalez* that a sentencing court was not permitted to examine the underlying facts of each predicate offense for career offender purposes. The Government concedes the issue. There being no argument to the contrary, we hold that it was error for the court to classify Andreu's grand theft conviction as a crime of violence based on a specific factual inquiry.[10] Since Andreu had not committed two crimes of violence, it follows that it was incorrect for the court to classify him as a career offender under § 4B1.1.

### D. Andreu's Upward Departure

■ The district court held, however, that even if it had found Andreu's prior grand theft conviction to be a non-violent offense, it still would have departed from the guidelines under § 4A1.3 and imposed the same sentence. Section 4A1.3 allows a sentencing court to depart from a guideline range if "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the de-

---

**8.** For example, Wright's FIP conviction, § 924(e)(1), provides for a range of 15 years (180 months) to life. After application of the career offender provision, § 4B1.1, the range was narrowed to 360 months to life. Again, this range was based on his recidivism. Since the guideline range was within the statutory range, Wright was not "penalized twice," that is to say, he was not punished twice for the same offense. *See United States v. Alvarez*, 914 F.2d 915, 920 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991); *United States v. Williams*, 892 F.2d 296, 304–05 (3d Cir.1989), *cert. denied*, 496 U.S. 939, 110 S.Ct.

3221, 110 L.Ed.2d 668 (1990). He did not receive any more punishment than was permitted under the applicable statutory provisions; rather, he merely obtained an individualized sentence based on a careful review of his criminal history.

**9.** *See supra* note 2.

**10.** The Government does not contend that grand theft is categorically a crime of violence, so we do not reach that question.

fendant's past criminal conduct or the likelihood that the defendant would commit other crimes." U.S.S.G. § 4A1.3. To recall, the district court departed from a range of 57–71 months and instead employed a range of 262–327 months. This departure was based on an increase of Andreu's total offense level from 19 to 34, and his criminal history category from V to VI.

Andreu insists that he was not given reasonable notice and a meaningful opportunity to comment on the upward departure, as required by Rule 32 of the Federal Rules of Criminal Procedure. In the alternative, he argues that the upward departure was not reasonable because (1) the facts did not warrant any departure and (2) the court did not consider a less drastic departure. Lastly, he contends that the court did not explicitly articulate the specific reasons for such a departure pursuant to 18 U.S.C. § 3553(b).

Because we find that Andreu was not afforded proper notice under Rule 32,[11] we do not reach his other arguments.[12] It is clear that a recent Supreme Court case, *Burns v. United States*,[13] —— U.S. ——, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991), controls this case. In *Burns*, the Court left no doubts about what Rule 32 demands from a sentencing court choosing to *sua sponte* depart from the guidelines:

> We hold that before a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling. This notice must specifically identify the

ground on which the district court is contemplating an upward departure.

*Burns*, —— U.S. at ——, 111 S.Ct. at 2187 (footnote omitted); *see also United States v. Cornog*, 945 F.2d 1504, 1513–14 (11th Cir.1991).

In this case, the PSI did not recommend an upward departure; nor did the Government present the court with a prehearing submission recommending an upward departure. Andreu's classification as a career offender was the sentencing issue that counsel for the Government and counsel for Andreu addressed at the sentencing hearing. When counsel concluded their arguments on this issue, the sentencing judge found Andreu to be a career offender and then announced that even if he were not a career offender she would *sua sponte* depart upward from the guidelines sentencing range. Up to that point, the entire hearing was devoted to the question of whether Andreu was a career offender.

In *Burns*, Justice Souter discussed the problems with contemporaneous notice. He found that:

> such a practice would be of little use in reducing the risk of error in sentencing determinations. A contemporaneous warning of upward departure might sharpen defense counsel's rhetoric, but it would not be of much help in enabling him to present evidence on disputed facts he had not previously meant to contest, or in preparing him to address the legal issue of the adequacy of the Guidelines in reflecting a particular aggravating circumstance. *Contemporaneous notice, would, then, probably turn out to be more a formality than a substantive benefit.*

**11.** The Government did not respond to this argument.

**12.** In light of our remand, we do note, however, that in order for a district court to properly depart upward more than one criminal history category, as was the case here, "it should consider the departure within the framework of the guidelines and justify it by degrees." *United States v. Delvecchio*, 920 F.2d 810, 814 (11th Cir.1991). "What the court cannot do is hold that because the defendant *almost* falls within the definition of career offender, i.e., he would

be a career offender if his sentences had not been consolidated, it automatically will treat him as such." *Id.; United States v. Faulkner*, 934 F.2d 190 (9th Cir.1991) (holding that it is improper to depart by analogy to the career offender provisions of the guidelines when the defendant is not a career offender because he has not been convicted of two crimes of violence).

**13.** We are mystified by the fact that neither party discusses this decision.

*Burns,* —— U.S. at ——, 111 S.Ct. at 2193 n. 4 (SOUTER, J., dissenting) (emphasis added).

The sentencing court gave Andreu an opportunity to object; however, *Burns* makes it clear that this is not enough. Rule 32 requires both an opportunity to comment upon the departure, and *reasonable notice* of the contemplated decision to depart. Under the circumstances, the judge did not give notice that she was *contemplating* departure; she simply announced her decision to depart. The notice given was more a formality than a substantive benefit.[14] Accordingly, we VACATE Andreu's sentence and REMAND for resentencing.

## IV. CONCLUSION

Wright's conviction and sentence are AFFIRMED. Andreu's conviction is also AFFIRMED, but because Andreu (1) should not have been classified as a career offender and (2) because Andreu was not afforded reasonable notice of the court's *sua sponte* upward departure from the guidelines, we VACATE Andreu's sentence and REMAND for resentencing.

AFFIRMED in part; VACATED and REMANDED in part.

**14.** We do not reach the broader question of whether contemporaneous notice could, in some circumstances, satisfy Rule 32 and *Burns*.