91 F.3d 146
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Douglas DAMON, Defendant-Appellant.
 No. 96-1253.
 United States Court of Appeals, Seventh Circuit.
 Argued July 10, 1996.
Decided July 12, 1996.
 
 Before POSNER, Chief Judge, and FLAUM and EASTERBROOK, Circuit Judges.
 
 Order
 
 1
 Douglas Damon operated a Ponzi scheme and pleaded guilty to mail fraud. The phantom business raked in some $7 million from investors. Damon returned $5.5 million to the investors as "profits" (an essential part of any pyramid scheme) and kept the rest. He could not make restitution after being caught, because he had lost the take gambling--the same way the "investors" lost the rest of their money, but with the difference that Damon knew the odds, while his pigeons were promised sure gains and kept in the dark about the true nature of the enterprise.
 
 
 2
 The judge calculated an offense level of 16: 6 as the base under U.S.S.G. § 2F1.1(a), 11 for the size of the loss under § 2F1.1(b)(1)(L), and 2 for multiple victims and more than minimal planning under § 2F1.1(b)(2)(A), (B), less 3 for acceptance of responsibility and cooperation after apprehension, § 3E1.1. Damon's multiple prior convictions for fraud placed him in Criminal History Category III, producing a sentencing range of 27 to 33 months. After giving notice, see Burns v. United States, 501 U.S. 129 (1991), the judge departed upward to Criminal History Category IV, with a range of 41 to 51 months, and sentenced Damon to 48 months' imprisonment plus three years' supervised release.
 
 
 3
 Damon contends that the notice of intent to depart was inadequate, because it came too late to allow him to withdraw his plea. That, however, is not a question of notice, but of negotiation. Damon could have negotiated a plea under which he received a particular sentence, or a sentence within a particular range, with the option to go to trial if the judge decided that a higher sentence was appropriate. Fed.R.Crim.P. 11(e)(1)(C). Instead, he entered a plea under Rule 11(e)(1)(B) and received the required advice, see Rule 11(e)(2), that the judge could impose a higher sentence without creating a right to withdraw.
 
 
 4
 The sentence itself is subject to deferential review, Koon v. United States, 64 U.S.L.W. 4512, 4516-17 (U.S. June 13, 1996), and is not an abuse of discretion. The Guidelines authorize departure if the criminal history does not fully reflect the seriousness of prior criminal history and the likelihood of repetition. U.S.S.G. § 4A1.3. The district judge observed that prior sentences had been amazingly light for Damon's life-long history of fraud. Apparently he cons judges into awarding low sentences by promising to repent and go straight, and then resumes his life of fraud as soon as he can. That pattern, the judge thought, made Damon a career criminal whose likelihood of recidivism was not captured by the formal assessment of criminal history points. We see no error in this approach; the Sentencing Commission invited it by saying in § 4A1.3 that a judge may depart upward for defendants who "have received lenient treatment, yet who may actually pose a greater risk of serious recidivism". The district judge was entitled to find that this describes Damon to a "T".
 
 
 5
 AFFIRMED.