**UNITED STATES of America, Plaintiff–Appellee,**

v.

**John J. RODAMAKER, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kaye A. RODAMAKER, Defendant–Appellant.**

Nos. 94–3758, 94–3759.

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1995.

Decided June 2, 1995.

Jonathan B. Hammond, Cedar Rapids, IA, for appellant John Rodamaker.

Keith E. Uhl, Des Moines, IA, for appellant Kaye Rodamaker.

Kandice Wilcox, Asst. U.S. Atty., Cedar Rapids, IA, for appellee.

Before WOLLMAN, Circuit Judge, FRIEDMAN * Senior Circuit Judge, and LOKEN, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This is a Sentencing Guidelines case. One of the appellants contends that the district court ** improperly (1) denied him a reduction in sentence for assumption of responsibility and (2) enhanced his sentence for his leadership role in the offense. The other appellant contends that the district court improperly denied her a reduction in sentence for being a minor participant in the offense. We reject these contentions and affirm the sentences.

## I

The appellant John Rodamaker was charged in a 35–count indictment returned in the United States District Court for the Northern District of Iowa with conspiracy to commit mail fraud, conspiracy to commit money laundering, 13 counts of mail fraud, 1 count of interstate transfer of stolen money, and 3 counts of filing false income tax returns. The appellant Kaye Rodamaker, his wife, was charged in 6 counts of the same indictment with the 2 conspiracies, the interstate transfer of stolen money, and the income tax violations.

Pursuant to plea agreements, both John and Kaye Rodamaker pleaded guilty to the money laundering conspiracy charge (count 29) and John Rodamaker also pleaded guilty to 1 count of filing a false income tax return (count 33). After the district court accepted those pleas, the government dismissed the remaining counts of the indictment.

A. In presentencing submissions, the Rodamakers admitted the facts set forth in the presentence reports, which included the following:

From 1985 to 1989 the Rodamakers were engaged in an "insurance speculation" scheme involving the purchase of multiple hospital indemnity insurance policies (HIPs), which pay specified amounts for each day of hospitalization, without regard to the amount of hospital expenses or other hospitalization insurance. "Individuals who purchase HIPs as part of an insurance speculation scheme typically purchase multiple HIPs, arrange to be hospitalized for injuries or illnesses that are difficult to diagnose or arise from unwitnessed accidents, then file claims on all the policies. Some insurance company applications for coverage and several companies' claim forms for benefits contain questions asking the applicant if they have other hospitalization insurance. The companies may decide to refuse coverage or cancel policies if several other insurance companies are listed. By not listing the other companies, the applicant is making a misrepresentation to the insurance company."

Between 1985 and 1989 John Rodamaker had as many as 96 HIPs in force, which paid him from $15 to $200 per policy for each day he was hospitalized. During this period he was hospitalized 24 times. His medical plans paid all but $814.79 of his total hospital bills of $133,317.84. John Rodamaker's HIPs policies paid him directly $656,891.13 for claims he filed under those policies during that period. "In order to obtain benefits from the HIPs, Rodamaker made false statements on insurance applications, made false statements on claims for benefits and had numerous accidents resulting in hospitalizations."

"The Rodamakers, knowing that at least a substantial portion of the insurance proceeds received during tax years 1985 through 1989 were fraudulently obtained and therefore taxable income, intentionally failed to report this income on their federal income tax re-

* DANIEL M. FRIEDMAN, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

** Honorable Edward J. McManus, Senior United States District Judge for the Northern District of Iowa.

turns for those years." Their tax returns for those years understated their gross income by $784,846.11.

"It was the usual practice of John Rodamaker to endorse checks received from insurance companies under his multiple HIP policies and deposit them to his and Kaye Rodamaker's bank accounts. It was also his practice to obtain cashier's checks and bank money orders often in the name of Kaye Rodamaker.... Many of these transactions, which John Rodamaker knew involved the proceeds of criminal offenses, took place in amounts greater than $10,000." The majority of the checks used to pay premiums on John Rodamaker's HIPs were written by his wife at his request.

In September 1990 the Internal Revenue Service informed John Rodamaker that he was under investigation. Within three days the Rodamakers began "liquidating assets and transferring assets to their children." All but 2 of 25 currency withdrawals made from three bank accounts were for either $9,000 or $9,975. The Rodamaker's daughter stated that she and her mother knew of the currency transaction reporting requirements for banks, and that her mother instructed her to keep withdrawals under $10,000.

B. The district court determined that John Rodamaker's Sentencing Guidelines range was 63–78 months. In reaching that conclusion, the court found that he had a supervising role in the offense and assessed a two level enhancement pursuant to U.S.S.G. § 3B1.1(c). The court also denied him a reduction for acceptance of responsibility, which the presentence report had recommended, because of his failure fully to admit his criminal conduct. The court sentenced him to consecutive terms of imprisonment of 60 months on the money-laundering-conspiracy count and 18 months on the false-tax-returns count, and a $100,000 fine.

The district court denied Kaye Rodamaker a two-level reduction for being a minor participant in the crime, which the presentence report had recommended. The court determined that her guidelines range was 32–41 months, and sentenced her to 41 months imprisonment and a $50,000 fine.

## II

■ "Whether a defendant has accepted responsibility is a factual question which depends largely on credibility assessments by the sentencing court." *United States v. Yell*, 18 F.3d 581, 583 (8th Cir.1994). Under the Guidelines, "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility and his determination should be afforded great deference and should not be disturbed unless it is without foundation." *United States v. Gleason*, 25 F.3d 605, 608 (8th Cir.) *cert. denied*, —— U.S. ——, 115 S.Ct. 283, 130 L.Ed.2d 199 (1994). "This court gives great deference to a district court's refusal to grant a reduction for acceptance of responsibility and will reverse only for clear error." *United States v. McQuay*, 7 F.3d 800, 801 (8th Cir.1993).

John Rodamaker has not shown that the district court committed clear error.

■ In denying a reduction for acceptance for responsibility, the district court explained:

Based on the presentence report and statements made in court, the court finds that the defendant failed to truthfully admit the conduct comprising the offense of conviction including Paragraph 11 of the indictment as incorporated into Paragraph 25 of the indictment setting forth the manner and means of the commission of the offense charged in Count 29, and therefore, he is not entitled to a reduction for acceptance.

Paragraph 11 of the indictment stated:

An object of the scheme and artifice to defraud was to obtain, by false and fraudulent representations and pretenses, insurance policies, referred to herein as HIP policies, which pay the insured a sum of money for each day the insured is committed to a hospital, the purpose and intent of the defendants being to obtain money from the benefits payable under such policies as

a result of hospitalizations occasioned by, or induced under pretense of, real, exaggerated, or faked illnesses or real, exaggerated or faked injuries sustained in real, staged, or faked "accidents."

■ John Rodamaker contends that the finding that he "failed to truthfully admit the conduct comprising the offense of conviction" was clearly erroneous because it was based upon the determination of the disputed factual question whether his multiple hospitalizations were, as paragraph 11 of the indictment alleged, "occasioned by, or induced under pretense of, real, exaggerated, or faked illnesses or real, exaggerated or faked injuries sustained in real, staged, or faked " 'accidents.' " He states that he consistently asserted, both in his comments on the presentence report and at the sentencing hearing, that all of those hospitalizations were medically justified, and that the district court's finding rejected that contention without an evidentiary hearing. He points out that although in his presentence submission, he accepted the findings in the presentence report, he denied "any inference that his hospitalizations were medically unnecessary."

In rejecting John Rodamaker's claim of acceptance of responsibility, the court relied on the allegations in the presentence report and "statements made in court." John Rodamaker appeared before the court and made a sworn statement, and the court was in the best position to judge the credibility of his claim that his numerous hospitalizations were all medically necessary.

There are also ample facts in the presentence report to support the court's conclusion, including the following:

1. In 1978 John Rodamaker was convicted of mail fraud for the same type of HIP scheme in the Northern District of Iowa. At that time, he admitted to the same district court judge who sentenced him in the present case that in perpetrating the scheme he had faked accidents.

2. John Rodamaker advised an obese individual to use staged accidents and slips and falls because they were difficult to refute, and to fake chest pains.

3. John Rodamaker drove 1,600 miles from Iowa to Nevada, where he was twice in the same month admitted to a hospital in Reno for treatment of an alleged phobia of automobiles. Between those two hospitalizations, he was admitted to a different Reno hospital for 10 days for a slip-and-fall injury to his leg.

4. A large number of John Rodamaker's hospitalizations were for slip-and-fall-type injuries or other types of accidents.

In the light of all the facts, the court was not required to accept John Rodamaker's assertion that all of his numerous hospitalizations were medically necessary and not part of his fraudulent scheme.

This is not a case in which a defendant challenges facts in the presentence report and an evidentiary hearing may be necessary for the district court to make findings on the disputed factual issues. *Cf. United States v. Moore,* 977 F.2d 1227, 1228 (8th Cir.1992). Here John Rodamaker did not challenge any of the facts of the presentence report; he disputed only the inference to be drawn from those facts. The district court could draw appropriate inferences from the facts, and was not required to hold an evidentiary hearing before rejecting his claim of acceptance of responsibility.

The district court's finding that John Rodamaker had not "truthfully admit[ted] the conduct comprising the offense of conviction" was not clearly erroneous.

### III

■ The district court enhanced John Rodamaker's offense level by two, pursuant to U.S.S.G. § 3B1.1(c), because of his "supervisory role in the offense," "the fact that the defendant was an organizer, manager, leader, or supervisor." "We will reverse the determination of a defendant's role in a criminal activity only if it is clearly erroneous." *United States v. Cotton,* 22 F.3d 182, 186 (8th Cir.1994). There was no clear error here.

John Rodamaker points to the government's statement at the plea-sentencing hearing that it "now feels that Mr. and Mrs. Rodamaker were pretty much equally involved in the scheme" and that "we believe that probably they were fairly [equal] in their culpability and would not request that enhancement at this time." Despite the government's opinion, however, there was ample evidence to support the district court's determination.

The uncontroverted facts in the presentence report show that John Rodamaker was the organizer, supervisor and manager of the fraudulent scheme. He previously had operated a similar insurance fraud, for which he had been convicted. He applied for and obtained the HIPs here involved, was the person hospitalized, filed the insurance claims and received the policy proceeds, which he turned over to his wife. At the plea-sentencing hearing, he stated that his wife "did what he ordered her to do" and withdrew the money from their accounts "[a]t my demand." The district court's determination that he was a manager and leader of the illegal scheme is not clearly erroneous.

## IV

■ Kaye Rodamaker challenges the district court's refusal to give her, pursuant to U.S.S.G. § 3B1.2(b), a two-level downward adjustment in the offense level for being a minor participant. She contends that the court's action denied her due process because of the court's failure to give her advance notice that it contemplated denying the adjustment, which the presentence report had recommended.

■ She relies upon *Burns v. United States,* 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991). There the Supreme Court held that "before a district court can depart upward from the sentencing guidelines range on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government, Rule 32 requires

that the district court give the parties reasonable notice that it is contemplating such a ruling. This notice must specifically identify the ground on which the district court is contemplating an upward departure." *Id.* at 138–9, 111 S.Ct. at 2187 (footnote omitted).

As she recognizes, however, this court twice has refused to extend *Burns,* which involved a sua sponte departure from the Guidelines sentencing range, to cover adjustments and enhancements within the range. *United States v. Willis,* 997 F.2d 407, 416–417 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 704, 126 L.Ed.2d 670 (1994); *United States v. Adipietro,* 983 F.2d 1468, 1473 (8th Cir.1993). *See, also, United States v. McLean,* 951 F.2d 1300, 1302–03 (D.C.Cir. 1991), *cert. denied,* 503 U.S. 1010, 112 S.Ct. 1775, 118 L.Ed.2d 433 (1992) (holding that *Burns* did not require the district court to notify the defendant that it intended to deny a downward adjustment for acceptance of responsibility which the presentence report had recommended).

Kaye Rodamaker points out that the Seventh and Ninth Circuits have reached a contrary conclusion. *United States v. Jackson,* 32 F.3d 1101 (7th Cir.1994); *United States v. Brady,* 928 F.2d 844, 847 n. 2 (9th Cir.1991). She urges us to follow those cases rather than our own *Willis* and *Adipietro* decisions. This panel, however, is bound by this court's prior decisions, *Gassler v. Wood,* 14 F.3d 406, 410 (8th Cir.1994), and we decline to recommend to the full court that it reconsider those cases en banc.

In the present case, the presentence report referred to the directive in U.S.S.G. § 3B1.2(b) for a two-level downward adjustment if the defendant is a minor participant in the criminal activity, and stated that Kaye Rodamaker was "seen as being less culpable than" her husband. Her plea agreement stated: "The government does agree that it will not object at sentencing to the defendant's request for a two-level reduction for being a minor participant pursuant to U.S.S.G. §· 3B1.2(b), however, the government would be free on any appeal to defend

the Court's decision should it choose to deny that reduction." Kaye Rodamaker was fairly on notice that although the presentence report recommended a downward adjustment for being a minor participant and the government would not oppose it, the district court *sua sponte* might deny the adjustment.

Although Kaye Rodamaker may have been less culpable than her husband, that did not necessarily make her a minor participant. The district court's finding that she was not a minor participant was not clearly erroneous.

Kaye Rodamaker had a major and important role in the scheme. She paid the majority of the premiums on the many HIPs, handled the insurance payments received and invested them. She signed 18 of the 22 checks of more than $10,000 deposited in various accounts. After the Internal Revenue Service informed John Rodamaker that he was under investigation, she liquidated the investment accounts and, with her daughter's help, established multiple bank accounts from which most of the cash withdrawn was in amounts slightly below $10,000. Her daughter stated that Kaye Rodamaker had instructed her to keep the withdrawals below $10,000.

The uncontroverted facts in the presentence report fully support the district court's determination that Kaye Rodamaker was not a minor participant in the offense.

The sentences are affirmed.