# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3038/3039

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Louis Winters, Jr., also known as | * | |
| Boy Winters, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: May 10, 2005
Filed: June 22, 2005

_____

Before MURPHY, FAGG, and BENTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Louis "Boy" Winters, Jr., was charged in separate indictments with conspiracy to distribute a controlled substance and being a felon in possession of a firearm. He pled guilty to both charges under plea agreements in which he waived most of his rights to appeal. Winters was sentenced to 262 months on the conspiracy count and 51 months on the firearm count, to be served consecutively. Winters appeals, arguing

that the district court[1] erred in its application of the sentencing guidelines and abused its discretion by imposing consecutive sentences. We affirm.

Winters left federal prison on supervised release in March 1998 and distributed drugs on the Pine Ridge Indian Reservation starting in 1998 or 1999. After his urine sample tested positive for cocaine in December 2000, he consented to a search of his residence. According to the Presentence Investigation Report (PSR), the search uncovered a semiautomatic pistol, marijuana, cocaine residue, two scales, a piece of rolled white paper, approximately $7,817 in cash, packaging papers, and six boxes of ammunition. Winters was detained pending revocation of supervised release. From jail he instructed his wife to continue distributing the cocaine that remained from his most recent purchase and to give Jerry Cottier large amounts of cash to purchase more cocaine for distribution. He returned to prison after his supervised release was revoked.

Upon his release in September 2002, he collected money from individuals to whom he had made loans or sold drugs and resumed distributing cocaine. His business grew, and Winters obtained a new source of cocaine in California and sent couriers there to purchase drugs. He continued to distribute cocaine until he was arrested in July 2003. Winters admitted responsibility for importing and selling 15 to 20 kilograms of cocaine. He also admitted to being a felon in possession of a firearm and specifically, that on January 1, 2003 he gave a Colt .45 pistol to another individual at his home in Pine Ridge and that he had previously been convicted of second degree murder.

After his arrest for the charges in this case, Winters wrote to his wife Michaela from jail. In the letter he made statements that could be construed as veiled threats.

---

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

He listed specific people and wrote "pay back time." Michaela showed the letter to one of the people Winters had mentioned in the letter.

Winters was charged in a superseding indictment in case 04-3038 with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and being an accessory after the fact, in violation of 18 U.S.C. § 3. He was charged in another superseding indictment in case 04-3039 with conspiring to distribute and to possess with the intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and possession with intent to distribute cocaine within 1,000 feet of a public secondary school, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 860(a). Winters entered into plea agreements in both cases and moved for "joint entry" of pleas and a joint sentencing hearing. The motion was supported by the government and granted by the district court.

In the firearm case, Winters agreed to plead guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The government agreed that it would recommend a two level reduction in offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and that Winters was entitled to an additional one level reduction under § 3E1.1(b)(2). The parties agreed that the sentence should run concurrently with that in the conspiracy case and that there were no grounds for departure from the guideline range which would be determined by the court. Under the agreement any recommendations by the government would not bind the court and Winters could not withdraw his guilty plea if the court rejected them.

Winters waived the right to appeal "any and all motions, defenses, probable cause determinations, and objections which he has asserted or could assert to this prosecution, and to the Court's entry of judgment against him and imposition of

-3-

sentence." Expressly excluded from the waiver provision was his right to appeal if the court were to depart upward from the guideline range "established by the Court for the offense." In his statement of factual basis for the guilty plea, Winters admitted that on January 1, 2003 he had possessed a Colt .45 automatic pistol which he then gave to another individual at his home in Pine Ridge. He admitted that prior to possessing the firearm, he had been convicted of the felony offense of second degree murder.

In the other plea agreement, Winters agreed to plead guilty to conspiring to distribute and to possess with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Winters admitted that from 1999 onward, he combined with others to bring cocaine from Denver, Colorado to sell in Pine Ridge and that over the course of the conspiracy he imported and sold between 15 and 20 kilograms of cocaine. Winters and the government stipulated that his base offense level would be 34, but acknowledged that their stipulation was not binding upon the court. The government agreed to recommend a nonbinding two level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and an additional one level reduction under § 3E1.1(b)(1). The parties agreed that the conspiracy sentence should run concurrently with the firearm sentence. Winters waived the right to appeal "any and all motions, defenses, probable cause determinations, and objections which he has asserted or could assert to this prosecution, and to the Court's entry of judgment against him and imposition of sentence," except he maintained the right to appeal a base offense level above 34 or any upward departures from the guideline range established by the court.

Winters pled guilty to the two counts, and a combined Presentence Investigation Report (PSR) was prepared and later revised following the Supreme Court's decision in Blakely v. Washington, 124 S. Ct. 2531 (2004). In outlining sentencing options for the court, the revised PSR presented nonbinding offense level

computations and criminal history calculations for the court's consideration and proposed no enhancements.

At the outset of the sentencing hearing the district court stated its conclusion that the federal sentencing guidelines were unconstitutional under Blakely v. Washington but that it would draw on them to assist it in arriving at a just sentence for the crimes. The court then calculated the guideline ranges using a criminal history category of III, as suggested in the revised PSR. The court stated that the base offense level for the firearm conviction was 20, resulting in a guideline range of 41 to 51 months, and that the base offense level for the conspiracy conviction was 34. It then added "one level under the multiple count adjustment" for an adjusted offense level of 35 and a sentencing range of 210 to 262 months. The government pointed out that the PSR had calculated the multiple count adjustment to be 34, rather than 35. The court responded that it would take that into consideration.

The PSR prepared prior to Blakely had recommended a four level enhancement for the felon in possession count under U.S.S.G. § 2K2.1(b)(5), for possessing or transferring a firearm with knowledge or intent that it would be used or possessed in connection with another offense. The relevant factual statement outlined in the PSR alleged that Winters gave a loaded Colt .45 to Stacy Winters on January 1, 2003 and that Stacy used the gun to kill Lucien Janis later that evening. Louis Winters objected to these facts and other related information. The original PSR had also recommended a two level enhancement on the conspiracy count for possession of a dangerous weapon under U.S.S.G. § 2B1.1(b)(1) and a four level role enhancement for organizer or leader under U.S.S.G. § 3B1.1(a). The PSR stated that over the course of the conspiracy approximately twenty one individuals sold, stored, transported, and repackaged cocaine for Winters.

The court stated that it would "treat the guidelines as non-binding but advisory" and that the statutory maximum sentence established by Congress would become the

-5-

high range for sentencing purposes. It went on to say that it need not resolve Winters' objections to the PSR because it was not imposing enhancements based on contested facts, but an indeterminate sentence. The court declined to apply a downward adjustment for acceptance of responsibility because the proceedings had been prolonged as evidenced by eighty docket entries in the file, Winters had had disciplinary problems in pretrial detention, and he had threatened to retaliate against witnesses. When defense counsel asked the court to impose a sentence within the guideline range calculated in the revised PSR, the court stated its view that the federal sentencing guidelines were only advisory, but that Winters "would be subject to a resentencing hearing" if they were later held to be mandatory. The court then sentenced Winters to 262 months on the conspiracy conviction and 51 months on the felon in possession conviction, with the sentences to run consecutively for a total sentence of 313 months.

Winters appeals his sentence, arguing that the procedural provisions of the sentencing guidelines remain binding after United States v. Booker, 125 S. Ct. 738 (2005), that the district court erred in its application of the multiple count adjustment, that it abused its discretion by failing to decrease the offense level for acceptance of responsibility, that it erred in computing his criminal history category, and that it erred and abused its discretion by imposing consecutive sentences.

We continue to review the district court's factual findings for clear error and the application of the sentencing guidelines de novo following the Supreme Court's decision in Booker. United States v. Mathijssen, 406 F.3d 496, 498 (8th Cir. 2005). We review Winters' sentences for unreasonableness in light of the factors set out in 18 U.S.C. § 3553(a). Booker, 125 S. Ct. at 765-66.

Winters argues that the district court erred in interpreting and calculating the multiple count adjustment under Chapter 3, Part D of the United States Sentencing Guidelines Manual. He argues that Booker made the sentencing guidelines advisory

only as to factual determinations made by the sentencing court, but that "procedural parts" of the guidelines remain binding, including those in Chapter 3, Part D relating to multiple counts and in Chapter 5, Part G relating to the imposition of concurrent or consecutive sentences. He contends that under § 3D1.4 the combined total offense level should have been 34 as calculated in the revised PSR, instead of 35 as determined by the court. Assuming a criminal history category of III, the resulting combined sentencing range should have been 188 to 235 months he contends, and the district court erred by imposing a total sentence of 313 months.

The government agrees that under the guidelines the correct combined total offense level would be 34. It points out, however, that both the government and Winters brought this issue to the court's attention at sentencing and that the court stated it was using the federal sentencing guidelines as advisory only. The government argues that under Booker the sentencing guidelines are advisory rather than mandatory and the district court could sentence Winters to any reasonable term of imprisonment below the statutory maximum sentences of 10 years on the firearm count and life on the conspiracy count.

We find no support for Winters' argument that portions of the sentencing guidelines remain mandatory after Booker. The Supreme Court held in Booker that the Sixth Amendment applies to the federal sentencing guidelines so that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S. Ct. at 755-56 (citing Apprendi v. New Jersey, 530 U.S. 466, 476 (2000)). In its remedial opinion the Court excised the statutory sections making the guidelines mandatory, 18 U.S.C. § 3553(b)(1), and controlling the standard of appellate review, 18 U.S.C. § 3742(e). Booker, 125 S. Ct. at 765. The effect was to make the guidelines as a whole advisory, rather than mandatory, id. at 756-57, and the Court instructed reviewing courts to review a sentence for unreasonableness. Id. at 765-66.

A sentencing court must calculate the guideline sentence and consider it, as well as the other sentencing factors in 18 U.S.C. § 3553(a) in arriving at its sentence. Booker, 125 S. Ct. at 764-65.

Under Booker the district court was not required to impose a sentence within the guideline range corresponding to a combined total offense level of 34, and there was no Booker error because the court applied the guidelines as advisory. At the beginning of the sentencing hearing, the court stated that the guidelines were unconstitutional, but that they "do provide some assistance to the trial courts in attempting to arrive at a just and fair sentence based upon all of the facts and circumstances." When defense counsel pointed out that the court had added a point to the combined offense level and recommended that it impose a sentence within the range set out in the revised PSR, the court stated that that approach would be correct if the guidelines were binding but that they were not. The court further noted that if the guidelines were later held to be mandatory, Winters would be entitled to a resentencing hearing.

Winters contends that the district court abused its discretion by denying a reduction for acceptance of responsibility which resulted in a higher total offense level than foreseen by the parties. Winters contends that the court ignored the facts that he pled guilty within a month of his arraignment on the last of four superseding indictments, that few of the docket entries consisted of motions made by him, and that the PSR did not recommend an enhancement for obstruction of justice. He contends that the court did not discuss how his disciplinary problems related to his acceptance of responsibility and that his due process rights were violated by the court's findings regarding these disputed matters without an evidentiary hearing. He further argues that the court's findings were clearly erroneous.

The government responds that Winters waived his right to appeal the court's refusal to grant him a reduction for acceptance of responsibility. While Winters

preserved his right to appeal any upward departure, the government says the denial of a downward adjustment is not an upward departure, citing United States v. Street, 257 F.3d 869, 870 (8th Cir. 2001). The government also contends that even though it recommended that Winters be credited for acceptance of responsibility, the district court did not clearly err by denying the reduction.

In the two plea agreements, Winters waived the right to appeal his sentence but reserved his right to appeal "should the Court depart upward from the guideline range established by the Court." The denial of a reduction for acceptance of responsibility was not an upward departure but was part of the court's calculations leading to the guideline range. See Street, 257 F.3d at 870 (obstruction of justice enhancement not an upward departure from guideline range established by the court). Winters waived his right to appeal a denial of the reduction for acceptance of responsibility, see United States v. Andis, 333 F.3d 886 (8th Cir. 2003) (en banc), and he does not claim that his appeal waiver was unknowing or involuntary or that it resulted in a miscarriage of justice. See Street, 257 F.3d at 870.

We will reverse a district court's refusal to grant a reduction for acceptance of responsibility only for clear error. United States v. Rodamaker, 56 F.3d 898, 901 (8th Cir. 1995). At sentencing the district court considered Winters' argument that he had pled guilty within a month of his arraignment on the fourth superseding indictment. It was familiar with the docket because it had signed many of the orders in the case, and Winters does not dispute some disciplinary problems in pretrial detention or the contents of the letter he wrote his wife from jail. The district court was entitled to draw inferences from these facts. See id. at 902 (district court could draw appropriate inferences from undisputed facts and was not required to hold an evidentiary hearing before denying adjustment for acceptance of responsibility). The district court was able to observe Winters' demeanor at the plea and sentencing hearings and was in the best position to determine whether Winters had accepted responsibility. See United States v. Colbert, 172 F.3d 594, 597 (8th Cir. 1999). We conclude that in the

circumstances of this case the district court did not clearly err by denying the downward adjustment without an evidentiary hearing.

Winters argues that the district court erred by computing his criminal history category based on facts not admitted by him or determined by a jury beyond a reasonable doubt. The district court adopted the revised PSR's calculation of criminal history which gave Winters three criminal history points for his prior convictions. It then added two points under U.S.S.G. § 4A1.1(d) for having been on supervised release while engaging in the drug conspiracy, and one additional point under U.S.S.G. § 4A1.1(e) for committing that offense less than two years following his release from custody. These additions raised Winters from criminal history category II to III which he claims violated Blakely v. Washington, 124 S. Ct. 2531 (2004), and Apprendi v. New Jersey, 530 U.S. 466 (2000). The government responds that Winters waived his right to challenge the district court's calculation of his criminal history, that he failed to make appropriate objections to the facts in the revised PSR, and that neither Blakely nor Apprendi bar a district court from making findings about criminal history.

Calculation of appellant's criminal history was a step in establishing the sentencing range under the advisory guidelines, not a departure from that range. See Street, 257 F.3d at 870. Although Winters would have been entitled to appeal an upward departure based on a finding that his criminal history category understated the seriousness of his criminal history record, there was no such finding or departure here. Through the waivers in his plea agreements, Winters waived his right to appeal the calculation of his criminal history category. See Andis, 333 F.3d 886. Winters also failed to object to facts in the PSR about his distributing drugs while on supervised release and less than two years following his release from custody. Even if the court had regarded the guidelines as mandatory instead of advisory, there would have been no Sixth Amendment violation by its criminal history findings, for facts related to prior convictions are sentencing factors for the court not the jury.

Almendarez-Torres v. United States, 523 U.S. 224 (1998); see Booker, 125 S. Ct. at 756; see also Shepard v. United States, 125 S. Ct. 1254 (2005); United States v. Johnson, 408 F.3d 535, 540 (8th Cir. 2005); United States v. Mattix, 404 F.3d 1037, 1038 (8th Cir. 2005).

Winters next challenges the district court's imposition of consecutive sentences. He argues that the offenses should have been grouped under U.S.S.G. § 3D1.2 as counts involving substantially the same harm because the firearm offense occurred while the drug conspiracy was ongoing, citing United States v. Waugh, 207 F.3d 1098 (8th Cir. 2000), and United States v. Rugh, 968 F.2d 750, 755 (8th Cir. 1992). He contends that the maximum total sentence the district court was authorized to impose under the guidelines was 235 months, the top of a guideline range calculated with a combined offense level of 34 and criminal history category III, and that § 5G1.2 requires that the sentences run concurrently. Under § 5G1.2(c) sentences should run concurrently if "the sentence imposed on the count carrying the highest statutory maximum is adequate" to reach the total sentence. Winters says the court should have imposed at most a sentence of 235 months on the conspiracy count and a concurrent sentence on the firearm count. He also contends that the government is not entitled to argue that the consecutive sentences should be affirmed because it agreed in the plea agreements that the sentences should run concurrently.

The government also cites Waugh in support of its argument that the offenses did not need to be grouped under U.S.S.G. § 3D1.2 and that consecutive sentences were permissible. It contends that the plea agreements did not bind it on appeal but that it carried out its contractual obligations, citing United States v. Colon, 220 F.3d 48 (2d Cir. 2000). Alternatively, it argues that any error would be harmless because the sentences were imposed under an indeterminate sentencing scheme.

The plea agreements stated that the court was not bound to follow any recommendations made by the government, and the government complied with its

-11-

contractual obligation to recommend concurrent sentences to the court. The only provisions in the plea agreements discussing appeals are the provisions under which Winters waived his right to appeal with exceptions for an upward departure from the range established by the court or for a base offense level higher than 34 on the conspiracy count. Although the parties agreed that the sentences for the two offenses should run concurrently, the plea agreements did not limit the government's response to issues on appeal. See Colon, 220 F.3d at 49, 51-53 (holding that government may argue on appeal contrary to the position a plea agreement required it to take at sentencing).

Under U.S.S.G. § 3D1.2 a court can group multiple crimes for the purpose of sentencing when they involve substantially the same harm, but "grouping is not appropriate and the court retains the discretion to sentence either consecutively or concurrently" if the crimes affected different victims, were separated in time, and involved dissimilar conduct. Waugh, 207 F.3d at 1102. The primary focus in determining whether offenses involve substantially the same harm is whether they involve the same victim and the same act or transaction. Id.; Rugh, 968 F.2d at 755. In this case, Winters pled guilty to two distinct crimes, being a felon in possession of a firearm and conspiring to distribute cocaine. These crimes did not have a common victim, were not part of the same act or transaction, and did not involve similar conduct. Although Winters admitted to being in possession of the firearm on one day in January 2003, the conspiracy spanned about four years so that most of the offense conduct was separated in time. We conclude that the district court did not clearly err by failing to group the offenses for sentencing purposes.

Winters argues further that the court abused its discretion by imposing consecutive sentences without considering the § 3553(a) sentencing factors since 18 U.S.C. § 3584 requires that the court consider these factors "in determining whether the terms imposed are to be ordered to run concurrently or consecutively." Under § 3553(a)(4) the district court must consider the applicable federal sentencing guideline

range, and Winters contends that his sentences must be remanded because they were based on the court's erroneous interpretation of the guidelines. He asserts that his 313 month total sentence is excessive when compared to a proper guideline range of 188 to 235 months using a combined total offense level of 34 and criminal history category III.

Justice Breyer's remedial opinion in Booker explained that a district court should impose sentence after considering the federal sentencing guidelines and other sentencing goals set out in 18 U.S.C. § 3553(a), 125 S. Ct. at 764-65, and that its sentence is to be reviewed for unreasonableness guided by these sentencing factors. Id. at 765-66. In making the reasonableness determination, we ask whether the district court abused its discretion. United States v. Pizano, 403 F.3d 991, 995 (8th Cir. 2005).

Although the district court considered the guidelines to be advisory, it nevertheless calculated a guideline range as Booker requires. It considered the revised PSR and its recommended sentencing range of 135 to 168 months, but it declined to grant a downward adjustment for acceptance of responsibility because it found Winters did not qualify for the reduction. It then imposed a sentence on the conspiracy count corresponding to a total offense level of 35 rather than 34 as calculated in the PSR. While the district court did not explicitly analyze all of the § 3553(a) factors, we have considered them in our review of its sentencing decisions and conclude that they support the reasonableness of Winters' sentence. See Pizano, 403 F.3d at 996. The district court particularly examined the nature and circumstances of the conspiracy offense, see 18 U.S.C. § 3553(a)(1), observing that one basis for Winters' sentence was the impact of his importation of drugs onto the reservation for at least four years, and finding that he had "committed much depredation in Indian country." See 18 U.S.C. § 3553(a)(2). The sentence imposed was not excessive compared to the guideline range calculated in the original PSR prepared before Blakely. See 18 U.S.C. § 3553(a)(4). Under that calculation a higher

-13-

range would have resulted, and Winters could have been sentenced up to life or 365 months even with a three level adjustment for acceptance of responsibility.[2] The court chose not to apply the recommended enhancements, however.

Also significant on the issue of unreasonableness is the fact that Winters is a repeat offender who began distributing cocaine on the Pine Ridge Indian Reservation soon after his release from federal custody. He admitted that he was responsible for importing between 15 and 20 kilograms of cocaine into Pine Ridge over a four year period. When his supervised release was revoked, Winters instructed his wife to keep purchasing and distributing cocaine in his place. He resumed the distribution business when he was again released from custody, and his business grew. While in jail after he was arrested for these offenses, Winters wrote a letter to his wife in which he listed specific people and wrote "pay back time." Winters also admitted that as a felon previously convicted of second degree murder he lent a gun to another individual. After reviewing the sentence imposed in light of all the statutory factors, we conclude that Winters' sentence was not unreasonable.

For these reasons the judgment of the district court is affirmed.

_____

[2]The original PSR had enhanced Winters' base offense level on the conspiracy count to arrive at a total offense level of 40, adding two levels for possession of a dangerous weapon under U.S.S.G. § 2B1.1(b)(1) and four levels for organizer or leader under § 3B1.1(a). His base offense level of 20 on the firearm count was enhanced four levels under § 2K2.1(b)(5) for lending the gun to Stacy Winters. The PSR then calculated a combined offense level of 41. With a criminal history category III, the resulting guideline range would have been 360 months to life.